SCANNED

### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | Criminal Case No. _____ |
| v. | : | |
| | : | Violation: |
| **PETRAIA MARITIME LTD.** | : | |
| | : | 33 U.S.C. § 1908(a) |
| **Defendant** | : | 18 U.S.C. § 1505 |

06-91-P-S

### INDICTMENT

The Grand Jury Charges that:

### COUNT 1
*33 U.S.C. Section 1908(a)*

#### Introduction

At all times relevant to this Indictment:

1.      Petraia Maritime Ltd. was the sole owner and operator of the *M/V Kent Navigator*, a freighter approximately 155 meters long and 12,800 gross tons, registered in Gibralter and doing business in Maine. Petraia Maritime Ltd. was a company located in Skarharm, Sweden, and was incorporated under the laws of the British Virgin Islands. Petraia Maritime Ltd.'s sole shareholder was Johan Runarsson.

2.      The engine department of the *M/V Kent Navigator* consisted of engineers and other employees of Petraia Maritime Ltd., and was headed by a Chief Engineer. The Chief Engineer had overall responsibility for the operations of the engine department, including the supervision of daily operations, formulating and implementing engine room procedures, verifying that all systems, including the oily water separator, were functioning properly, and recording entries in a required document called an oil record book.

3.     Engine room operations on vessels like the *M/V Kent Navigator* generate waste oil. Waste oil generated through leaks and dripping of oil, together with water, detergents, and other wastes, accumulate in the bottom or the "bilge" of the vessel. This liquid is collected, stored, and then processed to separate the water from the oil and other wastes using a pollution prevention control device known as an Oil Water Separator.

4.  From on or about April 12, 2004, through August 14, 2004, the M/V Kent Navigator entered United States ports and waters in the District of Maine five times. On August 14, 2004, the *M/V Kent Navigator* arrived in Portland, Maine. Coast Guard personnel conducted an inspection of the vessel. During the inspection, Coast Guard inspectors examined the interior of the overboard piping downstream from the Oil Water Separator and found that it contained heavy concentrations of oil. They made inquiries of the employees of Petraia Maritime Ltd. who were on board the ship, and examined the ship's oil record book.

## Legal Background

5.     The 1973 International Convention for the Prevention of Pollution From Ships and the Protocol of 1978 Relating to the International Convention for the Prevention of Pollution From Ships, (collectively known as "MARPOL") is an international treaty implemented in the United States by the Act to Prevent Pollution from Ships ("APPS"). 33 U.S.C. § 1901 *et seq.* APPS makes it a crime for any person to knowingly violate MARPOL, APPS, or the federal regulations promulgated under APPS. 33 U.S.C. § 1908(a). These regulations, promulgated by the Coast Guard, apply to all commercial vessels, including vessels operating under the authority of a country other than the United States, when these vessels are operating in United States

waters or while at a port or terminal under the jurisdiction of the United States. 33 C.F.R. § 151.09.

6. MARPOL sets forth the international standards for the maximum amount of oil permitted to be discharged into the sea from vessels. The maximum limit of oil content of discharges into the sea is 15 parts per million ("ppm") without dilution . 33 C.F.R. § 151.10(a)(5) and (b)(3); MARPOL Annex I, Reg. 9(4). MARPOL also requires vessels to have and maintain an oil sensing device to automatically stop a discharge into the sea of a mixture containing more than the legally permitted concentration of 15 ppm oil. 33 C.F.R. § 151.10(a)(6) and (b)(5); MARPOL Annex I, Reg. 16.

7. To assure that oil waste and oily water was properly processed and disposed of, the Coast Guard regulations and the MARPOL Protocol required that the responsible ship's officer, usually the chief engineer, record every operation involving oil-contaminated waste in a special engineering log, the oil record book. 33 C.F.R. § 151.25(a); MARPOL Annex I, Reg. 20. For the disposal of oil residue and for the discharge overboard or other disposal of accumulated bilge water, the responsible officer must record in the oil record book the time and date of that operation, the quantity of oil-contaminated water processed, and the latitude and longitude at which the operation began and ended. 33 C.F.R. § 151.25(d); MARPOL Annex I, Reg. 20. All accidental, emergency or other exceptional discharges of bilge waste or oil must be recorded in the oil record book along with the reason for the discharge. 33 C.F.R. § 151.25(g); MARPOL Annex I, Reg. 20. The entries are to be fully recorded without delay, signed by the person or persons in charge of the operation, usually the chief engineer, and each completed page must be signed by the Master of the ship. 33 C.F.R. § 151.25(h); MARPOL Annex I, Reg. 20. These

regulations apply to foreign-flagged ships when they are in the navigable waters of the United States or while at a port or terminal under the jurisdiction of the United States. 33 C.F.R. § 151.09. It is widely known within the maritime industry that the U.S. Coast Guard regularly inspects the oil record book during port state inspections to determine compliance with U.S. law and MARPOL and to assure that ships are not an environmental threat to U.S. ports and waters.

8. When a vessel was in United States' waters, the Coast Guard was authorized to board and conduct inspections and, among other things, examine the vessel's oil record book to determine, among other things, whether the vessel had operable pollution prevention equipment, whether it posed any danger to United States' ports and waters, and whether the vessel had discharged any oil-contaminated water in violation of MARPOL, APPS, or any other applicable federal regulation. 14 U.S.C. § 89(a); 33 C.F.R. §§ 151.23(a)(3) and 151.23(c). The Coast Guard had the authority to issue subpoenas to require the attendance of witnesses or the production of documents or other evidence to determine whether a vessel was in violation of MARPOL, APPS, or any other applicable federal regulation. 33 C.F.R. § 151.07(d). In conducting inspections, the Coast Guard relied on a ship's oil record book and statements of the crew to determine whether the vessel's crew was properly handling oil-contaminated water and its disposal. 33 C.F.R. § 151.23(c).

9. If the Coast Guard found evidence that a vessel was not in substantial compliance with MARPOL or APPS, the Coast Guard was empowered to deny a vessel's entry to a United States port or detain a vessel until it determines that the vessel does not present an unreasonable threat to the marine environment. 33 C.F.R. §§ 151.07(b), 151.23(b).

### False Oil Record Book

10.  On or about August 14, 2004, in Portland, Maine, and elsewhere, the defendant,

**Petraia Maritime Ltd.**

by and through the actions of its agents and employees, who were acting within the scope of their agency and employment, and for the benefit of Defendant, did knowingly and intentionally fail to maintain, and did cause the failure to maintain, an oil record book for the *M/V Kent Navigator* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water were fully recorded, and by failing to disclose exceptional discharges in which overboard discharges of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water had been made without the use of a properly functioning Oil Water Separator and Oil Content Meter and falsely indicating the proper use of required pollution prevention equipment, as required by Title 33, Code of Federal Regulations, Section 151.25.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2.

### COUNT 2
*18 U.S.C. §1505*
### Obstruction of Justice

11.  The allegations in paragraphs 1 through 9 are re-alleged and incorporated as if fully set forth in this paragraph.

12.  Beginning on or about August 12, 2004 and continuing through on or about August 26, 2004, in Portland, Maine, and elsewhere, the defendant,

**Petraia Maritime Ltd.**

by and through the actions of its agents and employees who were acting within the scope of their agency and employment, for the benefit of Defendant, did knowingly, intentionally and corruptly endeavor to influence, obstruct, and impede the due and proper administration of the law under which a pending proceeding was being had before an agency of the United States, to wit, the United States Coast Guard, by giving false statements to Coast Guard inspectors and investigators regarding operation of the Oil Water Separator and Incinerator, false statements to Coast Guard inspectors regarding the overboard discharge of waste and bilge contents, and directing crew members of the *M/V Kent Navigator* to destroy and conceal a hose-pipe assembly used for illegal discharges.

All in violation of Title 18, United States Code, Sections 1505 and 2.

### COUNT 3
*33 U.S.C. §1908(a)*
**False Oil Record Book**

13. The allegations in paragraphs 1 through 9 are re-alleged and incorporated as if fully set forth in this paragraph.

14. On or about June 8, 2004, in Portland, Maine, and elsewhere, the defendant,

**Petraia Maritime Ltd.**

by and through the actions of its agents and employees, who were acting within the scope of their agency and employment, and for the benefit of Defendant, did knowingly and intentionally fail to maintain, and did cause the failure to maintain, an oil record book for the *M/V Kent Navigator* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water were fully recorded, and by failing to disclose exceptional discharges in which overboard discharges of oil residue and discharges overboard

and disposals otherwise of oily mixtures, slops from bilges and bilge water had been made without the use of a properly functioning Oil Water Separator and Oil Content Meter and falsely indicating the proper use of required pollution prevention equipment, as required by Title 33, Code of Federal Regulations, Section 151.25.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2.

### COUNT 4
*33 U.S.C. §1908(a)*
**False Oil Record Book**

13. The allegations in paragraphs 1 through 9 are re-alleged and incorporated as if fully set forth in this paragraph.

14. On or about April 17, 2004, in Portland, Maine, and elsewhere, the defendant,

**Petraia Maritime Ltd.**

by and through the actions of its agents and employees, who were acting within the scope of their agency and employment, and for the benefit of Defendant, did knowingly and intentionally fail to maintain, and did cause the failure to maintain, an oil record book for the *M/V Kent Navigator* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water were fully recorded, and by failing to disclose exceptional discharges in which overboard discharges of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water had been made without the use of a properly functioning Oil Water Separator and Oil Content Meter and falsely indicating the proper use of required pollution prevention equipment, as required by Title 33, Code of Federal Regulations, Section 151.25.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Sections 2.

SIGNATURE REDACTED
ORIGINAL ON FILE WITH CLERK'S OFFICE

_____ Date: 11/21/06
WAYNE D. HETTENBACH
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division

_____ Date: 11/21/06
JONATHAN R. CHAPMAN
Assistant United States Attorney

-8-