UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 06-91-P-S |
| ) | |
| PETRAIA MARITIME, LTD., ) | |
| ) | |
| Defendant ) | |

*RECOMMENDED DECISION ON MOTIONS TO DISMISS AND TO SUPPRESS*

The defendant, Petraia Maritime, Ltd., moves to dismiss this action on the asserted grounds that this court lacks jurisdiction over the matter and that the indictment fails to charge a violation of United States law. Defendant's Motion to Dismiss, etc. ("Motion to Dismiss") (Docket No. 21) at 1. I recommend that the court deny the motion. The defendant also moves to suppress "all evidence obtained directly or indirectly as a result of any and all searches of the M/V KENT NAVIGATOR, and also including all evidence obtained by the government as the fruit of the foregoing unlawful searches." Defendant's Motion to Suppress ("Motion to Suppress") (Docket No. 25) at 5. I recommend that the court deny this motion as well.

**I. Motion to Dismiss**

The defendant is charged with violations of 33 U.S.C. § 1908(a) and 18 U.S.C. § 2 (Counts 1 & 3 - 4) and 18 U.S.C. §§ 2 & 1505 (Count 2). Indictment (Docket No. 1). Specifically, the indictment charges that the defendant intentionally failed to maintain an accurate oil record book for the *M/V Kent Navigator* as required by 33 C.F.R. § 151.25 and intentionally attempted to obstruct the proper

1

administration of law by giving false statements to Coast Guard personnel.  *Id*. ¶¶ 10, 12-14.[1]  The defendant contends that "the treaties, statutes and regulations cited in the Indictment together with long-settled principles of international law, all make clear that the United States has no jurisdiction over these matters and that the alleged events do not constitute criminal (or other) violations of United States law."  Motion to Dismiss at 1-2.  In support of this argument the defendant cites *United States v. Kun Yun Jho*, ___ F.Supp.2d ___, 2006 WL 3488952 (E.D. Tex. Dec. 4, 2006).  *Id*. at 2.[2]

The defendant undertakes an extensive discussion of the 1973 Convention for the Prevention of Pollution from Ships (known as MARPOL '73) and the Protocol of 1978 Relating to the International Convention for the Prevention of Pollution from Ships (known as MARPOL '78), the United Nations Convention of the Law of the Sea ("UNCLOS"), the Act to Prevent Pollution from Ships, 33 U.S.C. §§ 1901-15 ("APPS") and regulations implementing APPS, including 33 C.F.R. § 151.25.  Motion to Dismiss at 4-14.  The *M/V Kent Navigator* is a vessel registered with the government of Gibraltar and owned by the defendant, a corporation "located in Sweden and incorporated under the laws of the British Virgin Islands."  *Id*. at 14.  The indictment arises out of an inspection of the vessel by the Coast Guard begun when the vessel arrived in Portland, Maine in July 2004.  *Id*. at 15.  The defendant's argument is essentially that, because the alleged inaccuracies in the vessel's oil record book involve a discharge on the high seas outside the territorial jurisdiction of the United States, the actions constituting the crimes alleged in the indictment occurred outside the jurisdiction of the United States, which may not bring such charges under MARPOL and UNCLOS.  *Id*. at 17-25.

---

[1] The indictment contains two paragraphs numbered 13 and two paragraphs numbered 14, one set under the title Count 3 and one set under the title Count 4.  Indictment at 6-7.  I will refer to the former as paragraphs 13[1] and 14[1] and to the latter as paragraphs 13[2] and 14[2].

[2] The defendant also cites *United States v. Abrogar*, 459 F.3d 430, 431-32 (3d Cir. 2006), for the proposition that "U.S. courts may not impose an enhanced penalty, even where a U.S. crime has occurred, for pollution events occurring on the high seas."  Motion at 2.  That proposition is not relevant to the issues before the court in connection with the pending motion to dismiss.  Indeed, the defendant in *Abrogar* was convicted, albeit on a guilty plea, for failing to maintain an accurate oil record book as required by 33 C.F.R. § 151.25, in violation of 33 U.S.C. § 1908(a), in connection with an improper discharge of bilge waste that apparently took (*continued on next page*)

The government responds that the defendant lacks standing to raise international law as a defense, that the defendant is charged only for conduct that occurred within United States territory in violation of United States law and that the defendant's remaining arguments do not support dismissal of the charges. United States Opposition to Defendant's Motion to Dismiss ("Opposition") (Docket No. 38) at 3-5.[3] Finding the reasoning of the court in *United States v. Royal Caribbean Cruises, Ltd.*, 11 F.Supp.2d 1358 (S.D. Fla. 1998), persuasive, I need only consider the government's second argument.

The regulation at issue provides, in relevant part:

> (a) Each . . . ship of 400 gross tons and above other than an oil tanker . . . shall maintain an Oil Record Book . . . .
> * * *
> (d) Entries shall be made in the Oil Record Book on each occasion . . . whenever any of the following machinery space operations take place on any ship to which this section applies —
> * * *
>> (2) Discharge of ballast containing an oily mixture or cleaning water from fuel oil tanks;
>> (3) Disposal of oil residue; and
>> (4) Discharge overboard or disposal otherwise of bilge water that has accumulated in machinery spaces.
> * * *
> (g) In the event of an emergency, accidental or other exceptional discharge of oil or oily mixture, a statement shall be made in the Oil Record Book of the circumstances of, and the reasons for, the discharge.
>
> (h) Each operation described in paragraph[] (d) . . . of this section shall be fully recorded without delay in the Oil Record Book so that all the entries in the book appropriate to that operation are completed. Each completed operation shall be signed by the person or persons in charge of the operations concerned and each completed page shall be signed by the master or other person having charge of the ship.
>
> (i) The Oil Record Book shall be kept in such a place as to be readily available for inspection at all reasonable times and shall be kept on board the ship.

---

place on the high seas, the very scenario present here. 459 F.3d at 433.
[3] Page references herein regarding the government's opposition are to those beginning with the "argument" page.

> (j) The master or other person having charge of a ship required to keep an Oil Record Book shall be responsible for the maintenance of such record.

33 C.F.R. § 151.25(a), (d), (g)-(j). The statute invoked in the indictment provides, in relevant part:

> **(a) Criminal penalties; payment for information leading to conviction**
> A person who knowingly violates the MARPOL Protocol . . . or the regulations issued thereunder commits a class D Felony. In the discretion of the Court, an amount equal to not more than ½ of such fine [sic] may be paid to the person giving information leading to conviction.

33 U.S.C. § 1908(a). The regulation quoted in part above was issued under the MARPOL Protocol. 33 U.S.C. § 1903(b); 48 Fed. Reg. 45704-01 (Oct. 6, 1983). It applies to ships while in the navigable waters of the United States. 33 U.S.C. § 1902(a)(2). The indictment alleges that the *M/V Kent Navigator* was in the navigable waters of the United States at the relevant time. Indictment ¶ 4.

In *Royal Caribbean*, the defendant cruise line was charged with the knowing use or presentation of a false Oil Record Book for the cruise ship *Nordic Empress*. 11 F.Supp.2d at 1361. The alleged discharge of oil took place in Bahamian waters. *Id*. Upon its arrival in the port of Miami, the vessel was subject to a document and safety inspection by the Coast Guard. *Id*. There was no entry in the Oil Record Book indicating the alleged overboard discharge of oil. *Id*. The defendant filed a motion to dismiss the indictment on the grounds, *inter alia*, that the discharge and alleged false statement occurred beyond the navigable waters of the United States. *Id*. at 1362.

> The court held that
>
> > [w]hether or not the United States had the authority to regulate either the alleged . . . unauthorized discharge from the *Nordic Empress* or any attendant Oil Record Book violations at that time does not bear upon our inquiry as to whether the United States has jurisdiction to enforce its law in port in Miami, Florida regarding the commission of false statements made to a United States agency performing its regular and proper duties. We hold that it does. To find to the contrary would raise serious questions about the government's ability to enforce, as a matter of domestic law, false statements made in connection with such matters as bank fraud, immigration, and visa cases, where the false statements at issue were made outside of the United States,

>perhaps acceptable or in the alternative unnecessary under the appropriate foreign regulatory scheme, but nonetheless illegal under United States law.
>
>* * *
>
>We also note that as an alternate basis for jurisdiction . . ., the extraterritoriality doctrine providing jurisdiction over certain extraterritorial offenses whose extraterritorial acts are intended to have an effect within the sovereign territory seems applicable to this case. Certainly, deliberate use of false documents before the United States Coast Guard has an effect within the sovereign territory insofar as the agency's function is compromised and the laws that agency seeks to enforce undermined.

*Id*. at 1364 (citations and internal quotation marks omitted). The same argument applies when the crimes charged involve failing to maintain an accurate Oil Record Book.

The *Royal Caribbean* defendant also contended that the criminal charge was inconsistent with MARPOL and UNCLOS, making arguments essentially the same as those raised by the defendant in this case. *Id*. at 1366-67. The court held that

>[t]o the extent that the presentation of the materially false Oil Record Book to the Coast Guard constitutes a separate, actionable crime under United States law, MARPOL does not bar that prosecution. MARPOL's protocol for addressing pollution on the high seas cannot extend so far as to encroach upon the right of the United States to punish . . . a false statement presented in port to United States authorities.

*Id*. at 1368. To the extent that the presentation of the materially false Oil Record Book to the Coast Guard "can be interpreted as somehow falling under the rubric of MARPOL and the law of the seas," the court held that the concurrent jurisdiction provision of MARPOL allowed the United States to prosecute what was clearly a crime in and of itself: the presentation of a false Oil Record Book to the Coast Guard. *Id*.[4] First, I note that UNCLOS had not then and still has not been ratified by the United States. Motion to Dismiss at 17 (quoting *Jho*, 2006 WL 3488952 at *3); Opposition at 4, 6 & n.7. In any event, the court, noting that it was "not convinced that UNCLOS, a treaty which all parties agree applies to protect navigational freedoms and the law of the sea, has any bearing on this domestic

---

[4] The court also described the discharge of oil in an improper manner and the failure to keep an Oil Record Book as required under (*continued on next page*)

5

prosecution," *id*. at 1370, held that "[p]resentation of a false Oil Record Book seems more appropriately characterized . . . as an essentially domestic law violation over which the United States properly has jurisdiction," *id*. at 1371. "Because the gravamen of this action is not the pollution itself, or even the Oil Record Book violation occurring at that time, but the misrepresentation in port, this proceeding is not properly characterized as 'in respect to a pollution incident' such that UNCLOS, a convention addressing the law of the sea and appropriate protocols thereof, is applicable to this case." *Id*. The case at hand presents no distinguishing facts or circumstances, and the same result should obtain.

In *Jho*, a federal magistrate judge recommended a similar result in a case involving charges under 33 U.S.C. § 1908(a) of knowing failure to maintain an Oil Record Book and failing to disclose exceptional discharges in which the defendant made arguments essentially the same as those made by the defendant here. 2006 WL 3488952 at *5-*10, *17-*18, *20-*21, *28-*30. Ruling on objections to the recommended decision, the district court judge held, in a brief opinion, that "long-standing principles of international law made specifically applicable to [33 U.S.C. § 1901 *et seq*.] require dismissal of the criminal charges alleging violation of the Coast Guard regulations." *Id*. at *4. The district judge based this conclusion on the assertion that the government "is seeking to criminally prosecute a foreign flag ship for alleged violations of U.S. Coast Guard regulations that occurred outside U.S. waters." *Id*. For the reasons set forth in *Royal Caribbean*, I disagree. The discharge itself and the contemporaneous failure to record it in the Oil Record Book are acts that are separate and distinct from the acts that form the basis of the pending criminal charges.

---

MARPOL as separate, distinct crimes. 11 F.Supp.2d at 1368.

The defendant also contends that Counts 1, 3 and 4[5] of the indictment fail to charge crimes because "a false or fraudulent statement . . . was not intended to be subject to criminal sanctions under section 1908(a)." Motion to Dismiss at 22. This argument was rejected by the magistrate judge in *Jho*, 2006 WL 3488952 at *31-*32, a conclusion not addressed by the district court judge, for reasons which I find persuasive. The language of section 1908 is not inconsistent with criminal prosecution for violation of subsection (a).

Finally, the defendant contends that Count 2[6] must be dismissed because there was no "proceeding" within the jurisdiction of the Coast Guard with which the defendant could have interfered as charged. Motion to Dismiss at 25-26. That count alleges a violation of 18 U.S.C. § 1505, which provides, in relevant part:

> Whoever corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States . . . –
>
> Shall be fined under this title, imprisoned not more than five years or, if the offense involves international or domestic terrorism . . ., imprisoned not more than 8 years, or both.

18 U.S.C. § 1505. The defendant contends, Motion to Dismiss at 26, that "[t]his criminal investigation was in fact beyond the jurisdiction of the Coast Guard" for all of the reasons outlined in its arguments concerning Counts 1, 3 and 4, which I have rejected; because the matter should have been referred to Gibraltar under MARPOL, a contention which is inconsistent with my conclusion that the indictment alleges crimes under United States jurisdiction, not violations of MARPOL that occurred on the high seas; and because the investigation "should have been limited to verifying that there was on board a

---

[5] The caption suggests that this argument applies to Counts 1-3, Motion at 20, but it is apparent from the body of the motion and the indictment that the defendant intends the argument to apply to Counts 1, 3 and 4, all of which allege violation of section 1908(a), Indictment ¶¶ 10, 14[1], 14[2].

7

valid certificate," *id*. (internal punctuation omitted), an apparent reference to a specific section of MARPOL, *id*. at 13-14, a contention that is not borne out by the defendant's argument, and must be rejected if the defendant's position that MARPOL prohibits the charges brought in this indictment is rejected, as I recommend.

The defendant contends for the first time in its reply memorandum that the indictment must be dismissed because the government's alleged assertion that "Petraia is guilty of a crime against this country because it supposedly 'presented' [an inaccurate O[il] R[ecord] B[ook]] to the Coast Guard" is "false," because discovery "demonstrate[s] that during the port visit described in Count 1, the ORB, rather than being 'presented,' was seized 'as evidence' of conduct that allegedly occurred on the high seas;" that the ORB was not 'presented' during the port calls recounted in Counts 3 and 4; and that the indictment does not charge Petraia with "presenting" the Oil Record Book or with holding it out as accurate. Defendant's Reply Memorandum in Support of Motion to Dismiss (Docket No. 43) at 3. To the extent that this argument is properly before the court, *see Mitsubishi Caterpillar Forklift Am., Inc. v. Superior Serv. Assocs., Inc.*, 81 F.Supp.2d 101, 114 (D. Me. 1999) (issues raised for first time in reply memoranda will not be considered by court), what discovery may disclose generally goes to the weight of the evidence of the crime charged, not to the question whether an indictment should be dismissed for failure to charge a crime in the first place. More important, the indictment does not charge that the defendant "presented" anything. Rather, it alleges that the defendant "did knowingly and intentionally fail to maintain, and did cause the failure to maintain, an oil record book for the *M/V Kent Navigator* . . . ." Indictment ¶¶ 10, 14[1], 14[2]. However the government's argument in opposition to the defendant's motion to dismiss may properly be characterized, my recommended

---

[6] The defendant erroneously refers to the count charging obstruction of justice as "Count IV" or "Count 4." Motion at 25.

disposition is not based on any consideration of an assertion, not charged in the indictment, that the defendant "presented" the Oil Record Book to the Coast Guard.

## II. Motion to Suppress

The defendant offers essentially two arguments in support of its contention that "all evidence obtained directly or indirectly as a result of any and all searches of the *M/V Kent Navigator*, including all evidence obtained by the government as the fruit of the foregoing unlawful searches" must be suppressed. Motion to Suppress at 1. The second argument, which the defendant characterizes as "[m]ore important[]," is that the searches "were made for an improper and illegal purpose, were beyond the scope of the Coast Guard's authority, and violated the requirements prescribed by MARPOL." *Id*. at 4. It is clear from the defendant's brief discussion of this argument, *id*. at 4-5, that it is based on the same points asserted in support of its motion to dismiss, which I have rejected. The argument fails to support suppression for the reasons already discussed in connection with the motion to dismiss.

The first asserted argument is that any search of the vessel "was illegal as a result of the government's intentional misrepresentation of its purpose in inspecting and investigating the vessel." *Id*. at 3. The defendant argues that

> the searches involved in this matter were the product of misrepresentation and trickery and, as such, all evidence derived from them should be suppressed. The Vessel's owners complied with numerous demands for information and access to the ship by the Coast Guard and did so based on the Coast Guard's false assurances that the investigation was entirely civil in nature.

*Id*. at 4. The defendant also refers to the fact that the vessel "was searched without a warrant." *Id*. at 3. Significantly, none of the case law cited by the defendant in support of this argument deals with searches of vessels by the Coast Guard.

9

The government responds that the Coast Guard needed neither a warrant nor consent to board and inspect the vessel. United States Opposition to Motion to Suppress (Docket No. 37) at 4. If that were the case, any misrepresentation by the Coast Guard to the crew of the vessel would be irrelevant. In fact, the Coast Guard does not need a search warrant or consent to board and inspect a vessel in United States waters.

> The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance.

14 U.S.C. § 89(a). *See also* 33 U.S.C. § 1907(c)(2) (authorizing inspection of vessel subject to the MARPOL Protocol while at port subject to jurisdiction of United States to verify possible violation of MARPOL Protocol). The First Circuit has held that a warrantless document and safety inspection conducted by the Coast Guard under section 89(a) on the high seas is constitutionally valid. *United States v. Hilton*, 619 F.2d 127, 131 (1st Cir. 1980). Certainly an inspection conducted in a United States port, in United States territorial waters, is less intrusive than one occurring on the high seas. *See also United States v. Pringle*, 751 F.2d 419, 424-25 (1st Cir. 1984) (requiring only reasonable suspicion under section 89(a) for boarding of vessel with foreign registry on high seas). In addition, in *United States v. Arra*, 630 F.2d 836, 845 (1st Cir. 1980), the First Circuit held that the Coast Guard's actual motivation for boarding a vessel was not relevant where an objective basis for conducting a document and safety check existed. This holding is consistent with the Supreme Court's statement in *Whren v. United States*, 517 U.S. 806, 812 (1996), that in *United States v. Villamonte-*

*Marquez*, 462 U.S. 579 (1983), a case involving the boarding of a foreign-flag vessel, "flatly dismiss[ing] the idea that an ulterior motive might serve to strip the agents of their legal justification."

In its reply memorandum, the defendant cites a single case which it asserts dealt with "very similar facts" and "held that evidence obtained as a result of such false representations as to the nature of a Coast Guard investigation, even if made innocently, must be suppressed." Defendant's Reply Memorandum in Support of Motion to Suppress (Docket No. 44) at 4. That case, *United States v. Schröder*, 2006 WL 3717896 (S.D.Ala. July 6, 2006), did not involve the boarding or searching of a vessel. It did involve a seaman's claim that he was entitled to have counsel present when being questioned by Coast Guard personnel in connection with an incident that led to criminal charges; the court found that the Coast Guard personnel "materially mislead" the defendant about the criminal nature of the investigation when directly asked and that the misleading statement led to the defendant's incriminating statements in the absence of counsel. *Id*. at *3. The court excluded statements made by the defendant after "[t]here was clearly a criminal investigation of defendant" underway but not those made before that date (when the matter had not yet been referred for criminal investigation). *Id*. The court cites only non-maritime case law in support of its conclusion.

In this case, the defendant asserts that a Coast Guard agent "whose function is exclusively to investigate possible criminal violations" boarded the *M/V Kent Navigator* along with other Coast Guard personnel. Motion to Suppress at 2. It asserts that the vessel's crew "did not have any awareness that the USCG was conducting a criminal investigation," *id*., but that is not the test under the *Schröder* decision. The question is whether the investigative personnel affirmatively misled the vessel's crew about the nature of the investigation. Even if that were what had happened, however, such misrepresentation could not have had the effect that was at issue in *Schröder*. In that case, the Coast Guard obtained incriminating statements, in the absence of counsel, that it might not have

11

obtained but for the active misrepresentation. In the case at hand, from all that appears in the motion papers, the Coast Guard did not obtain any physical evidence from the vessel as a result of the alleged misrepresentations, because consent to search the vessel was not required. The defendant does not dispute the government's assertion that any statements by crew members "admitting wrongful conduct. . . all occurred with their retained individual criminal counsel present." United States Opposition to Motion to Suppress at 10. Under these circumstances, there is no basis for suppression of any evidence.[7]

Because the defendant is not entitled to suppression of any evidence as a matter of law on the showing made, its request for an evidentiary hearing on this motion, Motion to Suppress at 1, is denied.

### III. Conclusion

For the foregoing reasons, I recommend that the defendant's motions to dismiss (Docket No. 21) and to suppress (Docket No. 25) be **DENIED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

---

[7] This case is distinguishable from *United States v. Santana*, 433 F.Supp.2d 138 (D. Me. 2006), in which Judge Hornby concluded, *id.* at 139-40, that an evidentiary hearing is required when a criminal defendant contends that a warrantless search lacked probable cause. Here, no warrant was required and the government does not carry the burden of proof that an exception to the warrant requirement is applicable. This defendant filed a reply memorandum after the government stated in its opposition that any incriminating statements made by the vessel's crew members were made in the presence of their counsel. The defendants did not dispute this crucial factual assertion in their response.

Dated this 28th day of February, 2007.

        /s/ David M. Cohen
        David M. Cohen
        United States Magistrate Judge