UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v.                                        )<br>                                           )     Docket No. 06-CR-91-P-S<br>PETRAIA MARITIME LTD.,     )<br>                                           )<br>        Defendant.                )  | |

**ORDER ON ADMISSIBILITY OF STATEMENTS OF OFFICERS
AND UNLICENSED CREWMEN OF THE DEFENDANT CORPORATION**

Before the Court are the Government's Motion in Limine to Admit Prior Admissions by Defendant (Docket # 57) and Defendant's Request for Oral Argument on Motion to Admit (Docket # 74). To the extent that Defendant requested a hearing on the Government's Motion, this Request was GRANTED and the Court held a hearing on May 10, 2007. As the Court announced from the bench at the close of this hearing, the Government's Motion (Docket # 57) is hereby GRANTED IN PART and DENIED IN PART. This written order serves as the Court's explanation and clarification of that oral ruling.

**I.    FACTS**

On August 14, 2004, the M/V *Kent Navigator*, which was owned and operated by Defendant Petraia Maritime Ltd., entered port in Portland, Maine.[1] Upon its arrival, the *Kent Navigator* was boarded and inspected by the United States Coast Guard. Petraia Maritime crewmembers on board at that time included, among others, a Chief Engineer, Felipe B. Arcolas, a Second Engineer, Alfredo D. Lozada, and two unlicensed engineering crewmen, Edmundo T. Buendichio and David G. Celda.[2] These four crew members of the M/V *Kent Navigator* were all

---

[1] The Defendant had owned and operated the vessel since February 2004 and at all times charged in the indictment.

[2] Second Engineer Lozada, when he was not serving the Defendant as a Second Engineer, also served aboard the

citizens of the Philippines.  Based on their findings during this routine inspection, the Coast Guard commenced a more detailed investigation into the operation and use of the Oily Water Separator ("OWS") and the incinerator.

On August 18, 2004, the Government applied for and was issued warrants for the arrest of material witnesses Felipe Arcolas and Alfredo Lozada.  (Def. Ex. 4.)  On August 19, 2004, the Government sent letters to the attorneys for Arcolas and Lozada offering use immunity in exchange for Arcolas and Lozado giving an "off-the-record proffer of information."  (Def. Exs. 6 and 7.)  On August 20, 2004, Arcolas and Lozado gave statements regarding their knowledge of the alleged violations of federal law that occurred onboard the M/V *Kent Navigator* in interviews with investigators for the Coast Guard and an Assistant U.S. Attorney.  (Memorandum of Interview (Exs. A and B to Gov't Mot. in Limine to Admit Prior Admissions by Defendant.))  The interviews with Arcolas and Lozado were conducted in the presence of their counsel.  (Id.)  On August 26, 2004, Petraia Maritime entered into a Security Agreement providing terms for, and permitting, the release of the M/V *Kent Navigator*.  (Gov't. Ex. 4.)  The M/V *Kent Navigator* departed Portland on August 27, 2004.  (Gov't. Ex. 2.)

On September 3, 2004, Arcolas and Lozado entered into an agreement with the Government to cooperate and pled guilty and, thereafter, on September 7, 2004, they each pled guilty to a one count information, which charged them with making false statements in violation of 18 U.S.C. § 1001.  (Gov't Exs. 15 and 16.)  On September 28 and 29, 2004, Arcolas and

---

*Kent Navigator* as the Chief Engineer.  The Chief Engineer, as the most senior of the engineering crew, is responsible for all mechanical and engineering operations aboard a vessel and has overall managerial and supervisory authority over the entire engineering crew.  The Second Engineer is the next most senior engineer aboard the vessel, and on board the *Kent Navigator*, was responsible for, among other duties, operating the Oily Water Separator ("OWS").  The lower-level, unlicensed engineering crew members are responsible for performing the day-to-day engineering duties as directed by the more senior engineering crew.  On the *Kent Navigator*, these duties included, among others, attaching and disconnecting a hose used to discharge bilge and sludge waste overboard.

Lozado were again interviewed by investigators for the Coast Guard and an Assistant U.S. Attorney. (Memorandum of Interview (Exs. A and B to Gov't Mot. in Limine to Admit Prior Admissions by Defendant.)) The interviews with Arcolas and Lozado were conducted with in the presence of their counsel. (Id.) On October 6, 2004, Arcolas and Lozado testified before the Grand Jury investigating Petraia Maritime. (Gov't Exs. 11 and 12.) On January 13, 2005, Arcolas and Lozado were both sentenced to two years probation. Included in their probationary terms was the condition that "[u]pon request by the Government that the defendant return to the United States for any purpose related to the further investigation related to the defendant's conduct, the defendant shall in a timely manner return to the United States as arranged by the Government." (Judgment in a Criminal Case (Docket # 12), 04-100-P-H; Judgment in a Criminal Case (Docket # 12), 04-101-P-H.) After sentencing, Arcolas and Lozado returned to the Philippines.

With respect to the unlicensed engineering crewmen, on August 24, 2004, the Government sent letters to the attorneys for Buendichio and Celda offering use and derivative use immunity in exchange for Buendichio and Celda agreeing to "cooperate fully with law enforcement agents and government attorneys." (Def. Exs. 10 and 11.) Later that day, Buendichio and Celda gave statements regarding their knowledge of the alleged violations of federal law that occurred onboard the M/V *Kent Navigator* in interviews with investigators for the Coast Guard and an Assistant U.S. Attorney. (Memorandum of Interview (Exs. C and D to Gov't Mot. in Limine to Admit Prior Admissions by Defendant.)) The interviews with Buendichio and Celda were conducted with the assistance of interpreters and in the presence of their counsel. (Id.) The next day – August 25, 2004 – Buendichio and Celda testified before the Grand Jury investigating Petraia Maritime. (Gov't Exs. 13 and 14.) On August 26, 2004, the

Government applied for and was issued warrants for the arrest of material witnesses Buendichio and Celda.[3] (Def. Ex. 5.) Thereafter, Buendichio and Celda were formally detained on those warrants and during this time they stayed at a hotel in the Portland area. Buendichio and Celda were permitted to leave the District of Maine only after the engineering officers pleaded guilty. (Gov't Ex. 7; Def. Ex. 14 ¶ 7.) In light of Celda and Buendichio's admissions, both Arcolas and Lozada were charged with making false statements in the oil record book and during the Coast Guard inspection.

While in Portland, the engineering officers and unlicensed engineering crewmen made a number of statements at different times to the Government, which, for purposes of this motion, the Government groups into four different categories. The first category of statements were made by the declarants to the Coast Guard during the initial onboard inspection of the Defendant's vessel on August 14, 2004 after the M/V *Kent Navigator* arrived in Portland. These were statements by the crew members that concerned their duties and responsibilities on board the *Kent Navigator*, and include the statements by Arcolas, Lozada, Buendichio and Celda that the Government alleges were false, i.e. that the OWS was being used properly to discharge the ship's bilge waste, that the OWS and the incinerator were working in such a manner that allowed them to properly dispose of the ship's oily waste and that the crew did not engage in or use any hose to bypass the OWS.

The second category of statements were made by the declarants to the Government during the course of the Coast Guard investigation. These statements were made in the days following the initial boarding on August 14 and were made by the declarants to the Government. When these statements were made, the declarants had either cooperation and immunity

---

[3] The Government warrants permitted the detention of Buendichio and Celda until they gave depositions pursuant to Federal Rule of Criminal Procedure 15.

agreements or use immunity agreements with the Government. In these statements, the declarants admit their role in bypassing the OWS, discharging oily bilge and sludge waste overboard and creating the false records. The third category of statements were made by these same four crew members while testifying before the grand jury investigating this matter. All four crewmembers testified regarding their actions and role in bypassing the OWS, discharging oily bilge and sludge waste overboard and in ultimately creating the false records maintained on board the M/V *Kent Navigator*. The fourth type of statements were the factual admissions made by Chief Engineers Arcolas and Lozada when they pled guilty. Both Engineers signed and adopted statements regarding their conduct and these statements were ultimately accepted by the Court at the entry of their pleas. (Agreement to Plead Guilty and Cooperate (Exs. E and F to Gov't Mot. in Limine to Admit Prior Admissions by Defendant.))

## II.   DISCUSSION

The Government's Motion in Limine seeks a pre-trial ruling on the admissibility of various statements pursuant to Federal Rule of Evidence 801(d)(2)(D). All of the statements the Government seeks to introduce were made by the engineering officers and unlicensed crewmen of the Defendant's ship, the M/V *Kent Navigator*; however, none of these individuals were present to testify at trial. The Government asserts that it "has attempted to secure these now former employees' testimony for trial, either live or through deposition. The United States has been unsuccessful in its attempts to do so to date, and therefore, it is unlikely that any of these now former employees will appear at trial." (Gov't Mot. in Limine to Admit Prior Admissions by Defendant at 4 n.3.) Specifically, the Government seeks the admission, pursuant to 801(d)(2)(D), of the following categories of statements: (1) statements made by Arcolas, Lozado, Buendichio and Celda to the Coast Guard during the onboard inspection of the vessel shortly

after it arrived in Portland, Maine on August 14, 2004; (2) statements made by Arcolas, Lozado, Buendichio and Celda to the government during the course of the investigation in the presence of counsel, (Ex. A (Arcolas from August 20 and September 28, 2004), Ex. B (Lozada from August 20 and September 29, 2004), Ex. C (Buendicho August 24, 2004), Ex. D (Celda from August 24, 2004) Gov't Mot. in Limine to Admit Prior Admissions by Defendant); (3) statements made by Arcolas, Lozado, Buendichio and Celda while testifying before the grand jury investigating this matter, (Gov't Ex. 11 (Lozada testimony from October 6, 2004), Gov't Ex. 12 (Arcolas testimony from October 6, 2004), Gov't Ex. 13 (Celda testimony from August 25, 2004), Gov't Ex. 14 (Buendicho testimony from August 25, 2004)); and (4) statements made by Arcolas and Lozado when they pled guilty to criminal charges related to their actions in this case, (Gov't Ex. 15 (Lozada plea September 3, 2004), Gov't Ex. 16 (Arcolas plea September 3, 2004)).  The declarants' unavailability is immaterial to admitting the non-hearsay statements in Rule 801(d).

Defendant objects to the admission of these statements arguing that their admission against Petraia Maritime would violate the Confrontation Clause of the United States Constitution because all of the statements were made without the opportunity for cross examination and the declarants were unavailable to testify at trial.  U.S. Const. Amend. VI; Crawford v. Washington, 541 U.S. 36 (2004).  The Government responds, with respect to the first category of statements – made by the two Petraia Maritime engineering officers and two crewmen to the Coast Guard during the onboard inspection of the vessel shortly after arrival in Portland on August 14, 2004 – that they form the basis of the obstruction of justice charge (Count II) and will not be offered for the truth of the matter asserted.  It is clear from Crawford that the Confrontation Clause has no role unless the challenged out-of-court statement is offered for the truth of the matter asserted in the statement.  The Confrontation Clause "does not bar the

6

use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 60 n. 9; see also United States v. Hansen, 434 F.3d 92, 100 (1st Cir. 2006) (statements not barred by Crawford because they were not offered for their truth, but to provide context to the recorded conversation); United States v. Jimenez, 419 F.3d 34, 44 (1st Cir. 2005) (finding Crawford inapplicable because "challenged statements were properly admissible, not for their truth, but to provide context"). Therefore, the admission of statements made by Arcolas, Lozado, Buendichio and Celda during the Coast Guard's initial inspection, if not offered for the truth of the matter at trial, will not violate the Confrontation Clause.[4]

The Government argues that the remaining three categories of statements are "not hearsay" under the aegis of Rule 801(d)(2)(D) as the vicarious admissions of Defendant Petraia Maritime. In order for these statement to be admissible pursuant to Rule 801(d)(2)(D) the Government "must establish, by a preponderance of the evidence, (1) that an agency relationship existed; (2) that the statements were made during the course of the relationship; and (3) that the

---

[4] At trial, some of these initial statements by the crew members may have been considered by the jury for their truth. For example, the engineering officer's statements regarding the positioning of the valve handles when they ran the OWS equipment, which allowed fresh water to trick the sensor and permit the overboard discharge of oily water, may have been offered for its truth. The Court's recollection is that when these statements were offered at trial Defendant never objected to their admission or requested a limiting instruction. To the extent that these statements were considered for their truth, the Court is satisfied that such statements fall within the perview of Rule 801(d)(2)(D) admissions. Although it does not appear that the issue of the admissibility of a corporate defendant's vicarious admissions has been decided by any court post-Crawford, courts which have addressed the admissibility of other categories of 801(d)(2) statements have found their admissibility to present no Confrontation Clause problems. See, e.g., United States v. Tolliver, 454 F.3d 660, 665-66 (7th Cir. 2006)(when the defendant is the declarant the admission of tape recorded conversations between defendant and an informant did not violate the Confrontation Clause because defendant's statements were 801(d)(2)(A) nonhearsay admissions by a party opponent); United States v. Jenkins, 419 F.3d 614, 618 (7th Cir. 2005)(Crawford inapplicable to nonhearsay statements by a co-conspirator under 801(d)(2)(E)); United States v. Yi, 460 F.3d 623, 634 (5th Cir. 2006)(assuming without deciding that rule 801(d)(2)(D) survived Crawford, but providing no analysis on the issue); United States v. Lafferty, 387 F. Supp. 2d 500, 511-12 (W. D. Pa. 2005) (801(d)(2)(B) adoptive admission admissible against defendant without opportunity to cross-examine and court stated in dicta that "[i]t would appear that the four statements set forth in Rule 801(d)(2)(A) through (D) would be admissible against a criminal defendant consistent with the Sixth Amendment without an opportunity for cross-examination being provided because the nature of these four statements would make them the statements of the criminal defendant"). Because these statements are 801(d)(2)(D) admissions of Defendant and, as such, are defined as "not hearsay," the Court finds that their admission, even for the truth, does not violate the Confrontation Clause.

statements relate to matters within the scope of the agency." Gomez v. Rivera Rodriguez, 344 F.3d 103, 116 (1st Cir. 2003). The "statement must concern 'a matter within the scope' of the declarant's agency or employment. The statement itself is not required to be within the scope of the declarant's agency. Rather, it need only be shown that the statement be related to a matter within the scope of the agency." Larch v. Mansfield Mun. Elec. Dep't, 272 F.3d 63, 72 (1st Cir. 2001) (quoting 5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 801.33[2][c], at 801-69 (2d ed. 2001) (footnotes omitted)). In addition, it is clear that the statement need not be made by the employee at the insistence of the employer so long as "the declarant's statement concern matters within the scope of her agency or employment." Woodman v. Haemonetics Corp., 51 F.3d 1087, 1094 (1st Cir. 1995) (finding unpersuasive defendant's argument that the declarant "was only a 'first-line' supervisor, with no authority to make termination decisions").

Defendant contends that the statements, which were made after the declarants entered into immunity agreements with the Government, are inadmissible. Specifically, Defendant asserts that once Arcolas, Lozado, Buendichio and Celda signed immunity agreements with the Government, they could no longer be considered an agent of Petraia Maritime because they were acting for their own interests. After holding an evidentiary hearing, the Court finds that all of the statements falling into the latter three categories were not made during the course of any of the declarants' agency relationships with Petraia Maritime. Under these circumstances, the Court concludes that these statements fail to satisfy the standard for admissibility under Rule 801(d)(2)(D) for vicarious admissions by an agent.

Before being interviewed by the Coast Guard investigator on August 24, 2004, Buendichio and Celda signed cooperation and immunity agreements with the Government.

Those agreements provided, in part, that Buendichio and Celda "agree[] to cooperate fully with law enforcement agents and government attorneys." (Def. Exs. 10 and 11.) The agreements further provide that:

> [i]n return for your [] full and truthful cooperation, . . . the United States Attorney agrees not to use any statements made, or other information provided, by your client pursuant to this Agreement, or any information directly or indirectly derived there from against your client, coextensive with the use and derivative use immunity under 18 U.S.C. § 6001, in any criminal case except in prosecution for perjury, obstruction of justice or making a false statement after the date of this Agreement.

(Id.) Both of the categories of testimonial statements by Buendichio and Celda – the statements made in the interview with Coast Guard investigators and in the presence of counsel (Ex. C (Buendicho interview of August 24, 2004), Ex. D (Celda interview of August 24, 2004) Gov't Mot. in Limine to Admit Prior Admissions by Defendant), and the statements made while testifying before the grand jury investigating Petraia Maritime, (Gov't Ex. 13 (Celda testimony from August 25, 2004), Gov't Ex. 14 (Buendichio testimony from August 25, 2004)) – were made after they entered into the cooperation and immunity agreements with the Government. Although the Government offered evidence of Petraia Maritime's intent to continue the employment of these four individual crew members in order to secure the release of the *Kent Navigator*, there was no evidence as to whether the employment relationships continued after August 14, 2004, or when after August 14, 2004, the employment relationships ended.[5] It is clear, however, that once the crew members entered into cooperation agreements with the Government, the interests of the individual declarants diverged significantly from that of their employer and their interests, in fact, became adverse. See United States v. Summers, 598 F.2d

---

[5] The recitals in the Security Agreement include that the "Owner and Operator agree to continue the employment, under the terms of the existing employment contract, paying normal wages, of those officers (Chief Engineer Felipe B. Arcolas and Second Engineer Alfredo D. Lozada) and crewmembers (Motormen David G. Celda and Edmundo T. Buendichio) of the vessel who have been served with federal grand jury subpoenas and agree to keep the subpoenaed motormen in the District of Maine until the earlier of September 26, 2004, or the completion of any Rule 15 depositions." (Gov't Ex. 4 ¶ 6.)

450, 459 (5th Cir. 1979) (holding that statements made by agent after agent began cooperating with the FBI were inadmissible against principal, while statements made beforehand were admissible); Securities & Exch. Comm'n v. Geon Indus., Inc., 531 F.2d 39, 43 n. 3 (2d Cir. 1976) (holding that employee's testimony, given after he had been suspended from employment, was not admissible against employer because it was evident at time statement was made that parties could have conflicting interests); United States v. King, 134 F.3d 1173, 1176 (2d Cir. 1998) (recognizing that federal Rule 801(d)(2) does not allow an agent's statements to be imputed to the principal if the parties have conflicting litigation positions, but admitting statement where declarant was alter ego of corporation); see also Brink's Inc. v. City of New York, 717 F.2d 700, 719 n. 3 (2d Cir. 1983) (Winter, J., dissenting).  Once their interests deviated, the statements can no longer be found to be made during the course of the agency relationship.  Evidence presented at the hearing that once Buendichio and Celda gave their statements they were "uncomfortable" going back to the ship and, thereafter, were housed at a hotel in the Portland area, is consistent with the Court's conclusion that their statements are not of the type that Rule 801(d)(2)(D) authorizes admission.

The three categories of statements by Arcolas and Lozado, which the Government is seeking admission – the statements made in the interview with Coast Guard investigators and in the presence of counsel, (Ex. A (Arcolas from September 28, 2004), Ex. B (Lozada from September 29, 2004) Gov't Mot. in Limine to Admit Prior Admissions by Defendant)), the statements made while testifying before the grand jury investigating Petraia Maritime, (Gov't Ex. 11 (Lozada testimony from October 6, 2004), Gov't Ex. 12 (Arcolas testimony from October 6, 2004)), and the statements made during the course of pleading guilty to criminal charges related to their actions in this case, (Gov't Ex. 15 (Lozada plea September 3, 2004), Gov't Ex. 16

(Arcolas plea September 3, 2004)) – are likewise inadmissible since those statements were made after the engineering officers entered into the cooperation and immunity agreements with the Government. Arcolas and Lozada also made statements within the second category – statements made in an interview with Coast Guard investigators and in the presence of counsel, (Ex. A (Arcolas from August 20, 2004), Ex. B (Lozada from August 20, 2004) Gov't Mot. in Limine to Admit Prior Admissions by Defendant) – after they received use immunity, but before entering into formal cooperation agreements with the Government. At the time Arcolas and Lozada made those statements, the Coast Guard's inquiries had clearly moved beyond a routine inspection to conducting a full blown investigation, and Arcolas and Lozada were being detained as material witnesses. (Warrants for Arrest of Material Witness (Docket #s 2 and 3) in In re Grand Jury Investigation of Petraia Maritime, Ltd., 04-MJ-81-DMC; Def. Ex. 4.) On August 20, 2004, before being interviewed by the Coast Guard investigator, Arcolas and Lozada signed use immunity agreements, which provide that "no statement made by [Arcolas or Lozada] or other information provided by [Arcolas or Lozada] during the Proffer will be introduced against your client in any criminal proceeding." (Def. Exs. 6 and 7.) During the questioning Arcolas and Lozada were represented by their own attorneys, separate from counsel for Petraia Maritime. In the circumstances of this case, the Court finds that although on August 20, 2004, Arcolas and Lozada may have technically still been employed by Petraia Maritime and they had not yet entered into formal cooperation agreements with the Government, their interests had diverged significantly from those of Petraia Maritime. Therefore, the Court cannot find that the statements by Arcolas and Lozada on August 20, 2004 were made during the course of their agency relationship with Petraia Maritime.

In determining whether the statements were made during the course of the declarants'

11

agency or employment relationship with the Defendant, the Court is also informed by other aspects of the factual record. Specifically, the Court has considered the circumstances surrounding the declarants' unavailability and the Government's failure to depose the declarants to permit cross examination. The record establishes that the Government had ample opportunity to depose these witnesses both while they were in the custody of the United States and thereafter. Indeed, the Government applied for warrants to arrest Buendichio and Celda and those applications requested that "the Court detain these witnesses . . . until the United States has expeditiously secured their testimony pursuant to a deposition under Fed. R. Civ. P. 15." (Application for Material Witness Arrest Warrants (Docket # 1) in In re Grand Jury Investigation of Petraia Maritime, Ltd., 04-MJ-82-DMC; Def. Ex. 5.) The Court granted the Government's application. (Warrants for Arrest of Material Witness (Docket #s 3 and 4) in In re Grand Jury Investigation of Petraia Maritime, Ltd., 04-MJ-82-DMC; Def. Ex. 5.) Ultimately, the Government permitted Buendichio and Celda to leave Portland and return home to the Philippines without taking those depositions. Moreover, when Arcolas and Lozada were sentenced, the Government sought and obtained a provision that during their terms of their probation the engineers were required, upon request, to return to the United States to testify against Defendant. The Government never requested that Arcolas or Lozada return to the United States to give testimony – as their probationary sentences required. The Government sought and obtained a Court order authorizing the taking of Arcolas and Lozada's depositions on January 3, 2007. (Order on Gov't Request to Take Rule 15 Depositions (Docket # 30)). Arcolas and Lozada's probationary terms expired on January 13, 2007. The government noticed the depositions for January 22 and 23, 2007, one week after the engineers' probationary sentences had expired.

Case 2:06-cr-00091-GZS   Document 122   Filed 05/22/07   Page 13 of 14   PageID #: 950

Finally, the Court notes that the Government negotiated and executed a detailed Security Agreement with Petraia Maritime, which ultimately provided for the release of the ship. The Security Agreement includes a provision stating that the Defendant certifies that the documents seized from the ship are authentic under Federal Rule of Evidence 902(11). (Gov't Ex. 4 ¶ 7.) The Government could have negotiated additional terms of the Security Agreement providing that the statements the Government now seeks to have admitted are authorized statements made within the scope of the declarant's agency relationship with Defendant pursuant to Rule 801(d)(2)(D).

Considering all the circumstances of this case, the Court finds that the Government has failed to establish that the three latter categories of statements are admissible as vicarious admissions of a party opponent pursuant to Rule 801(d)(2)(D). The statements are, therefore, clearly hearsay. Defendant contends that because the Government has failed to satisfy the Court that the statements are properly admissible as vicarious admissions of Petraia Maritime, admission of these statements would violate the Confrontation Clause. See generally Crawford, 541 U.S. 36. Crawford held that the Confrontation Clause bars the admission of "testimonial" hearsay unless (1) the declarant testifies at trial, id. at 59 n. 9, or (2) the declarant is unavailable to testify and was previously subject to cross-examination concerning the statement, id. at 59. Neither condition is met in this case. Moreover, the statements made by the engineers and crewmembers after entering into the various agreements with the Government were clearly testimonial. Thus, the Court concludes that the three latter categories of statements are testimonial hearsay and, as such, are inadmissible at trial because their admission would violate the Confrontation Clause of the United States Constitution unless the Government had produced the declarants at trial for cross examination.

13

**III.   CONCLUSION**

Accordingly, the Court ORDERS that the statements made by the engineering officers and unlicensed crewmen after they were granted immunity by the Government are inadmissible unless the declarants are available to testify at trial.  In accordance with this order, the Government's Motion in Limine is GRANTED IN PART and DENIED IN PART.

So ORDERED.

                                           /s/ George Z. Singal  
                                           United States Chief District Judge

Dated this 22nd day of May, 2007.